```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

COUNTRYWIDE HOME LOANS, INC.,  :
                               :   NO. 1:09-CV-00504
    Appellant,               :
                               :   **OPINION AFFIRMING BANKRUPTCY**
                               :   **COURT**
  v.                           :
                               :
                               :
RUEN F. ROBBINS & RUTH ANN     :
ROBBINS,                       :
                               :
    Appellees.

       This matter is before the Court on Appellant Countrywide Home Loans, Inc.'s Appeal from the United States Bankruptcy Court (doc. 6), the Response of Appellees Ruen F. and Ruth Ann Robbins (doc. 8), and the Reply of Appellant (doc. 9).  For the reasons stated herein, the Court AFFIRMS the decision by the United States Bankruptcy Court for the Southern District of Ohio.

**I. Background**

       Appellees Ruen and Ruth Ann Robbins own two real estate parcels in Brown County, Ohio: a 28.102 acre parcel upon which sits their residence and a 1.079 acre parcel that is not contiguous to the residential parcel (doc. 8).  Appellant Countrywide loaned the Robbinses $81,000, which the Robbinses used to satisfy both a loan from Fifth Third, which had been secured by the residential 28-acre parcel, and a loan from First Clermont Bank, secured by the one-acre parcel (doc. 6).  As security for the Countrywide loan, the Robbinses gave Countrywide a mortgage securing only the one-acre

parcel and not the residential parcel (doc. 8). As part of their bankruptcy proceedings, the Robbinses sought (i) a declaratory judgment from the bankruptcy court that the residential parcel is unencumbered and (ii) modification of the Countrywide mortgage against the one-acre parcel in accordance with the applicable sections of the bankruptcy code (Id.). Countrywide then filed a counterclaim seeking, inter alia, reformation of its mortgage so that it would show that both the one-acre and the residential parcels secure the $81,000 Countrywide loan (doc. 6).

The Robbinses did not file a responsive pleading to Countrywide's counterclaim and failed to timely file responses to Countrywide's request for admissions (Id.). Consequently, Countrywide filed a motion for default judgment as to its counterclaim and a notice of expiration of time as to its request for admissions (Id.). In response, on April 13, 2009, the Robbinses filed a reply to the counterclaim and a motion to withdraw admissions, seeking to replace their non-responses to Countrywide's request for admissions with actual responses (Id.). As reason for the delay, the Robbins' counsel stated that it was entirely his mistake and that the Robbinses had timely provided their responses to him but he had inadvertently failed to note the deadline (doc. 1). Countrywide filed its motion for summary judgment on April 30, 2009, and on May 8, 2009, the bankruptcy court denied Countrywide's motion for default, granted the Robbins'

motion to withdraw the admissions considered to have been submitted when the Robbinses failed to timely respond to Countrywide's request, and granted the Robbinses leave to file a reply to Countrywide's counterclaim (Id.).

The bankruptcy court then held a bench trial on May 29, 2009, after which it entered judgment for the Robbinses, effectively denying Countrywide's motion for summary judgment and finding that the one-acre parcel alone secured the Countrywide loan, and the residential parcel was unencumbered (doc. 6). The parties dispute whether, prior to closing, the Robbinses intended to encumber both parcels or only the 28-acre parcel, but there is no dispute that, prior to closing, it was neither side's intention to only encumber the one-acre parcel (docs. 6, 8). It was at closing that the issue from which this matter arises came about, and the parties present two very different stories about what happened at the closing. At trial, Ruen Robbins testified that at closing the Robbinses discovered that there was no appraisal of the residential parcel, and they brought this omission to the attention of Countrywide's closing representatives (doc. 8). Specifically, Robbins testified that at closing Jim Arnold, the closing agent, pulled out an outline of the one-acre parcel and asked Robbins to show him where the residence was located on the parcel (doc. 8). Robbins informed Arnold that a mistake had been made because the residence was not located on the one-acre parcel and the property

to be encumbered by the loan was the 28-acre parcel (Id.). Arnold then contacted someone by phone at Countrywide, who asked to speak to Robbins, and Robbins informed this person of the mistake (Id.). The Countrywide representative asked Robbins several questions about the one-acre parcel, and indicated that there would not be enough time both to complete an appraisal on the 28-acre parcel and to close the loan before the end of the year (Id.). Robbins ended the phone conversation unsure if the closing would continue if only the one-acre parcel was available as security for the loan, but Arnold represented that it would, and, indeed, it did–the loan documents were signed that day, with only the one-acre parcel as security (Id.).

Countrywide disputes this version of the closing, as it did at trial, and contends that the phone conversation Robbins testified about never took place and that both parties intended that both the one-acre and the 28-acre parcel would serve as security for the loan (docs. 6, 9). Indeed, Countrywide asserts that it "would never have loaned the money" to the Robbinses if its only security was going to be the one-acre parcel (Id.). In short, Countrywide asserts that the mortgage listing only the one-acre parcel as security was the result of a mutual mistake and scrivener's error and, as such, Countrywide argues that it is entitled to relief (Id.). At trial, Countrywide elicited the testimony of Jim Arnold, the closing agent, whose testimony

directly contradicted Robbins', and Linda DeMartini, an operational team leader in risk and litigation for Countrywide who reviewed the loan file prior to testifying at trial.

The bankruptcy judge found Ruen Robbins' testimony credible and believed that events at closing transpired as Robbins described. Consequently, the bankruptcy judge found for the Robbinses.

Countrywide then timely appealed the bankruptcy court's decision, including the court's implied denial of Countrywide's summary judgment motion. All responsive documents have been filed, and the matter is ripe for the Court's consideration.

## II. Discussion

The Court has jurisdiction over Countrywide's timely filed appeal under 28 U.S.C. 158(a)(1) and reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. In re Kennedy, 249 F.3d 576, 579 (6th Cir. 2001). The Court reviews a denial of summary judgment for abuse of discretion. Lenning v. Commercial Union Ins. Co., 260 F.3d 574, 580-81 (6th Cir. 2001). Countrywide rests its appeal on several issues, both factual and legal, and the Court addresses each below.

### A. Issues of Fact

While Countrywide claims that it is entitled to relief through a number of different avenues, the thread common to nearly all of Countrywide's claims, and one that is dispositive of many,

is the intent of the parties. Although the parties dispute whether both parcels or only the 28-acre parcel were meant to be encumbered by the loan, it is not disputed that, prior to closing, the parties intended to encumber the 28-acre parcel. However, in finding credible Robbins' version of the events at closing, the bankruptcy court essentially found that the intent of the parties at closing changed from what it had been prior to and that, at the time the loan documents were signed, the parties intended to only encumber the one-acre parcel. To find that the bankruptcy court erred in its determination that Robbins' version of events was credible, this Court would need to find that the court's decision was clearly erroneous. In other words, after reviewing the entire evidence, this Court would have to be left with the "definite and firm conviction" that the bankruptcy court made a mistake. In re Herdean, 92 Fed.Appx. 107 (6th Cir. 2003).

The bankruptcy court was presented with two opposing versions of what happened at closing. Robbins testified that he brought the mistake regarding the one-acre parcel to the attention of the closing agent, that Robbins himself spoke to someone at Countrywide regarding the mistake, and that the closing agent was instructed to proceed with the documents as written and, therefore, that Countrywide knowingly closed the loan with only the one-acre parcel as security. Arnold, the closing agent, testified in contrast that Robbins never raised the issue of the one-acre

parcel, that the phone conversation never took place, that he received no instructions to continue the closing on just the one-acre parcel, and that the mistake was not noted by anyone at closing. This type of "he said/he said" is the classic dilemma presented to the finder of fact, and the bankruptcy court, which is in the best position to make this determination, found that one side was more believable than the other. Credibility determinations are afforded great deference and are generally not subject to reversal upon appellate review. United States v. Dixon, 479 F.3d 431, 435 (6th Cir. 2007). Moreover, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." League of United Latin American Citizens v. Perry, 548 U.S. 399, 445 (2006), quoting Anderson v. Bessemer City, 470 U.S. 564 (1985). Upon reviewing the entire evidence, this Court finds no clear error by the bankruptcy court. The bankruptcy court made a legitimate determination of credibility, and this Court is in no way left with a "definite and firm conviction" that a mistake was made.

### B. Issues of Law

In its appeal, Countrywide argues that the bankruptcy court erred in twelve ways. In addition to their argument above, that the court erred by finding for the Robbinses despite their intention to encumber the 28-acre parcel, Countrywide contends that the court erred by denying Countrywide summary judgment; by not

-7-

granting Countrywide equitable subrogation, an equitable mortgage or reformation of the mortgage; by permitting and relying on hearsay testimony over Countrywide's objections; by not finding that the Robbinses were equitably estopped from denying the encumbrance of the 28-acre parcel; by imputing the actions of the mortgage broker and the closing agent to Countrywide; by considering the number of witnesses presented by Countrywide rather than their substantive testimony; by considering the general reputation of lenders and the current economic conditions; and by granting the Robbins' motion to withdraw admissions and failing to grant Countrywide's motion for default judgment (doc. 6). The Court, having conducted a de novo review of these issues, does not find Countrywide's position well taken, for the reasons that follow.

### 1. Equitable Subrogation, Equitable Mortgage, Reformation and Equitable Estoppel

Countrywide contends that the intention of both parties was that the residential, 28-acre parcel be encumbered by the loan at issue here and that the failure to encumber that parcel was a mutual mistake and scrivener's error (docs. 6, 9). Consequently, Countrywide argues, it is entitled to any or all of the equitable relief it seeks (Id.). The Robbinses argue that the remedies sought by Countrywide all rely on the premise that a mistake was made and that the parties' intentions at the time of execution were the same as their intentions prior to closing (doc. 8).

Countrywide contends in reply that the Robbinses intended to execute a mortgage on both parcels as evidenced by the Robbinses using the proceeds of the Countrywide loan to pay off both the Fifth Third and the First Clermont Bank loans (doc. 9). Indeed, Countrywide rests on this fact as the basis for its equitable subrogation claim: its loan paid off the other two loans, which were secured by the two parcels of property, and it, therefore, should stand in the shoes of Fifth Third and be given a security interest in the 28 acres (Id.). "The relevant fact here," according to Countrywide, "is that a prior lien was paid" (Id.). Because the prior loans were paid by the Countrywide loan, Countrywide argues that the Robbinses would be unjustly enriched by having an unencumbered 28-acre parcel if the mortgage is permitted to stand as executed (Id.).

Countrywide insists that the concept of mutual mistake is not an element of each of the remedies it seeks (doc. 9), but that misses the point. Regardless of whether mutual mistake is a predicate fact for each of the equitable remedies sought by Countrywide, each of the remedies is predicated on the assumption that Countrywide deserves, in equity, to be somehow restored to the position it now claims it intended to be in at the time of closing. However, the bankruptcy judge found that Countrywide did not intend at the time of closing to encumber both parcels. On the contrary, the bankruptcy judge found that Countrywide intended at the time of

closing to only encumber the one-acre parcel. In order to grant Countrywide the equitable relief it now seeks, whether by virtue of equitable subrogation, equitable estoppel, equitable mortgage or reformation, the Court would need to find that the bankruptcy judge's factual finding was error, and that the parties intended, at the time of closing, to encumber both parcels. See, e.g., Kildow v. EMC Mortgage Corp., 232 B.R. 686, 694 (Bankr. S.D. Ohio 1999)(reformation appropriate when mortgagor intended to grant, and mortgagee intended to take, mortgage on entire parcel notwithstanding the fact that mortgage deed described an area covering only part of the parcel); Syring v. Sartorious, 277 N.E.2d 457, 458-59 (Ohio App. Ct. 1971)(noting that an equitable lien arises either from a written contract showing an intention to encumber particular property or is implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings). The Court has already found that the bankruptcy court's finding was not clear error. Therefore, because the bankruptcy court found that neither party intended to encumber both parcels at the time of closing, Countrywide's equitable claims fail.

A special note with respect to equitable subrogation is warranted here because the importance of the parties' intent at closing is less obvious with respect to this claim. Equitable

subrogation is a theory of unjust enrichment. State v. Jones, 399 N.E.2d 1215, 1219 (Ohio 1980)(Holmes, J., dissenting). It "arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." Id. at 1217. In order to be entitled to equitable subrogation, the "equity must be strong and [the] case clear." Id. at 1215. Countrywide's assertion that the relevant fact is that a prior lien was paid off understates the law. To prevail on a theory of equitable subrogation, Countrywide needs more than the fact that its loan was used to pay off Fifth Third's loan: it needs to prove that the Robbinses were unjustly enriched by that payment. Beyond the mere assertion that this was true, Countrywide has offered no proof of unjust enrichment. On the contrary, taking the Robbins' version of events as true, Countrywide made a business decision to not delay the closing until after the year's end, which meant that it would take a lien in only the one-acre parcel. Countrywide cannot now claim that the Robbinses were unjustly enriched by Countrywide's own business decision. Under these circumstances, the equity is not strong, the case is not clear, and Countrywide is not entitled to equitable subrogation.

### 2. Actions of the Closing Agent and Mortgage Broker

Countrywide contends that the bankruptcy court erred when

it found that Robbins called the one-acre issue to the "attention of the agent of the lender" because such a finding erroneously imputes to Countrywide the actions of the closing agent (doc. 6). The Robbinses note that DeMartini, the witness upon whom Countrywide relied to establish Countrywide's normal practice and to articulate Countrywide's intentions, stated over objection that the title agent represented Countrywide at the closing (doc. 8).

The Court need not reach the issue of whether, in this case, the mortgage broker and/or the closing agent were, legally speaking, agents of Countrywide such that their actions should properly be imputed to Countrywide because Countrywide's arguments here misconstrue the bankruptcy court's decision. The bankruptcy court found that Robbins' version of events was credible, while Countrywide's version was not. Under the credible version of events, Robbins had a phone conversation with someone at Countrywide, passed the phone to the closing agent, and moments later, the closing agent said that Countrywide had authorized the closing with only the one-acre parcel as security. Robbins, therefore, brought the one-acre issue to Countrywide's attention directly, not via someone else. Countrywide, not the closing agent, therefore, made the decision to close, knowing the pros and the cons of closing on only the one-acre parcel. Countrywide's reliance on <u>Washington Mutual Bank v. Chiapetta</u>, 584 F.Supp.2d 961 (N.D. Ohio 2008) is misplaced. There, the issue was whether a

mistake in the title search made by the title company could be attributed to the lender such that it would preclude the lender from taking advantage of equitable estoppel. Id. at 971-72 (noting, inter alia, that Ohio courts do not allow equitable estoppel to be used to benefit parties who were negligent in their business transactions and were in the best position to protect their own interests). Here, if a mistake was indeed made regarding the closing, it was made by Countrywide's phone representative who made the decision to close with only the one-acre parcel as collateral.

### 3. Hearsay, Number of Witnesses and General Reputation Evidence

Countrywide argues that the bankruptcy court erred when it relied on Robbins' testimony regarding conversations that occurred between him, the closing agent, the mortgage broker and the Countrywide phone representative (doc. 6). Countrywide contends that it objected to this testimony on the basis of hearsay and argues that the bankruptcy court's refusal to sustain Countrywide's objections amounts to clear error because Robbins' testimony was offered for the truth that Countrywide agreed to take a mortgage on only the one-acre parcel (Id.). The Robbinses contend that Countrywide's failure to procure a findings of fact and conclusions of law from the bankruptcy court makes it pure speculation as to the extent to which the bankruptcy court relied upon any piece of evidence in its ruling (doc. 8). They argue

further that any statements by Countrywide, its employees or its agents are not hearsay by virtue of Federal Rule of Evidence 801(d)(2) as admissions of a party opponent and that they did not introduce any out of court statements for the truth of the matter asserted therein, thus taking all such statements out of the realm of hearsay (Id.).

Evidentiary rulings are reviewed for abuse of discretion. Maday v. Public Libraries of Saginaw, 480 F.3d 815, 819 (6th Cir. 2007). The Robbinses are correct that any determination regarding the effect of the admittance of testimony over objections is difficult absent a findings of fact and conclusions of law from the bankruptcy court. However, the Court need not reach that issue because the Court finds that the statements to which Countrywide actually objected on the basis of hearsay were not hearsay. Contrary to its assertion, Countrywide did not object on the basis of hearsay to Robbins' testimony regarding conversations between him, the closing agent, the mortgage broker and Countrywide's phone representative. Instead, when Robbins was testifying as to his conversation with the phone representative, and only then, Countrywide objected to the statement, "And he just asked a whole lot of questions like [what's on that acre you got] and then he said, 'So the title search was done on that 1.8 [sic] acres?'" The bankruptcy court did overrule Countrywide's hearsay objection to that, and properly so. That statement was clearly not being

-14-

offered for the truth that the title search was, in fact, done on that parcel, and it is therefore not hearsay. And no reading of the trial transcript could lead to the conclusion that the statement was being offered, as Countrywide now contends, for the truth that Countrywide agreed to take a mortgage on only the one-acre parcel. A complete review of the trial transcript shows that this is the only time Countrywide objected on a hearsay basis when the bankruptcy court overruled such objection. The Court finds no abuse of discretion here.

Countrywide also argues that the bankruptcy court erred because it considered the number of witnesses Countrywide offered instead of the content of the testimony provided by those witnesses (doc. 6). Indeed, Countrywide accuses the bankruptcy court of bias against it because it credited Robbins' view of events even though the Robbinses produced no corroborating witnesses (Id.). Here, Countrywide misreads the court's decision. The bankruptcy court did note that the only witnesses for Countrywide were the closing agent and a Countrywide employee who was conversant with the loan file. But, in context, the court's meaning is clear: it was the absence of the testimony of whoever authorized the loan that was troubling to the bankruptcy court, not from a numbers' perspective but from a substantive perspective, because Countrywide's position was not credible otherwise. Nothing in the record supports Countrywide's assertion that the bankruptcy court based its

-15-

decision on the number of witnesses offered by Countrywide; instead, it appears quite clear that the bankruptcy court based its decision on the credibility of the witnesses who appeared for both sides. The Court finds no abuse of discretion here and no evidence of bias.

Finally, Countrywide argues that the bankruptcy court erred by "considering the general reputations of lenders and the current economic conditions" when it found for the Robbinses (docs. 6, 9). However, Countrywide does not point to anywhere in the record where the bankruptcy court supposedly considered those factors. Indeed, apart from the bald assertion in the heading, Countrywide offers no support of any kind for this proposition. The Court cannot engage in a divination exercise to understand the bases for Countrywide's assertion here. However, the Court has thoroughly reviewed the transcript in this case and can find no support for this claim. Therefore, the Court finds no abuse of discretion.

### 4. The Motion to Withdraw Admissions and the Motion for Default Judgment

Countrywide argues that the bankruptcy court erred when it failed to grant Countrywide's motion for default judgment and allowed the Robbinses to file their reply out of time because, Countrywide contends, the Robbinses failed to show that they had good cause for their failure to timely file their reply (docs. 6, 9). Further, Countrywide contends that it was prejudiced by the

bankruptcy court allowing the Robbinses to withdraw their admissions after the allotted time for responding to Countrywide's questions had passed (Id.).

The bankruptcy court's decision vacating the default judgment and allowing the Robbinses to withdraw their admissions was discretionary. See Fed. R. Civ. P. 6(b)(court may, for good cause, extend time); Fed. R. Civ. P. 36(b)(court may permit withdrawal if it would promote the presentation of the merits and if the court is not persuaded that it would prejudice the other party); Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 154 (6th Cir. 1997)(abuse of discretion is standard of review). The bankruptcy court presented a well-reasoned opinion, based in the law of the circuit, supporting its decision (doc. 1), and nothing presented by Countrywide successfully refutes that opinion or shows that the court abused its discretion. The court found that the Robbinses were not at fault and that the blame for failure to comply in a timely manner lay entirely with their counsel (Id.). Given the circuit's strong preference for trial on the merits, the bankruptcy court was well within its authority to vacate the default judgment; indeed, the court presented a compelling argument that under the circumstances present it was required to do so (Id., citing Buck v. United States Dep't of Agric., 960 F.2d 603, 608 (6th Cir. 1992)).

With respect to the withdrawal of admissions, the

prejudice contemplated by Rule 36(b) "relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal...of an admission." Kerry, 106 F.3d at 154. The rule contemplates something more than any prejudice Countrywide may have suffered by having to convince the court of the falsity of any of the Robbins' admissions. See id. Countrywide has presented no evidence of any special difficulties and has not shown the level of prejudice contemplated by Rule 36(b). Instead, while the motion to withdraw was granted after Countrywide submitted its motion for summary judgment, it was granted in advance of trial, and Countrywide has made no showing that, for example, it did not call witnesses or was otherwise unprepared for or hampered at trial as a result of the court granting the withdrawal. Consequently, the Court finds no abuse of the bankruptcy court's discretion regarding either motion.

### 5. Denial of the Motion for Summary Judgment

For the foregoing reasons, the bankruptcy court did not err in denying Countrywide's motion for summary judgment. Clearly, the court, in permitting the case to continue to trial, found that issues of material fact were in dispute such that summary judgment for Countrywide was inappropriate. That the bankruptcy court's decision rests heavily on its determination of witness credibility bears this out. The Court finds no abuse of discretion.

**III. Conclusion**

For the foregoing reasons, the decision of the United States Bankruptcy Court for the Southern District of Ohio is AFFIRMED in its entirety (doc. 1).

SO ORDERED.

Dated: March 4, 2010         /s/ S. Arthur Spiegel
                             S. Arthur Spiegel
                             United States Senior District Judge